IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER HOGUE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 2:13-00375-N |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Christopher Hogue brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his application for supplemental security income ("SSI"). The parties have consented to the exercise of jurisdiction by the undersigned United States Magistrate Judge for all proceedings in this Court pursuant to 28 U.S.C. § 636(c). (*See* Doc. 26.)

Upon consideration of the administrative record ("R.") (Doc. 14), Hogue's brief (Docs. 15, 16), the Commissioner's brief (Doc. 19), and the arguments presented at the hearing held April 15, 2014 (*see* Docs. 22, 23, 25), the Court has determined that the Commissioner's decision denying Hogue benefits should be **REVERSED** and **REMANDED** for further proceedings not inconsistent with this decision.[1]

---

[1] Any appeal taken from this memorandum opinion and order and simultaneously entered separate judgment shall be made directly to the Eleventh Circuit Court of Appeals. (*See* Doc. 26.)

## I. Procedural Background

Hogue filed an application for SSI on December 3, 2010 (R. 164-169), alleging a disability onset date of June 2, 2010 (*see* R. 164); this date was subsequently amended (*see* R. 163) to December 1, 2010.[2] His application was initially denied. (*See* R. 108-112.) A hearing was then conducted before an Administrative Law Judge on April 4, 2012. (*See* R. 41-81.) On May 29, 2012, the ALJ issued a decision finding Hogue not disabled (R. 10-40), and Hogue sought review from the Appeals Council. The Appeals Council issued its decision declining to review the ALJ's determination on May 24, 2013 (*see* R. 1-9)—making the ALJ's determination the Commissioner's final decision for purposes of judicial review, *see* 20 C.F.R. § 404.981—and a complaint was filed in this Court on July 22, 2013 (*see* Doc. 1).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, a plaintiff (also sometimes referred to herein as a claimant) bears the burden of proving that he or she is unable to perform his or her previous work. *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether a plaintiff has met this burden, and thus proven that he or she is disabled, the examiner (most often an ALJ) must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the plaintiff's age, education, and work history. *Id.* An ALJ, in turn,

---

[2] Hogue was previously found to be disabled for a closed period of time, from December 25, 2008 through June 1, 2010. (*See* R. 94-104.)

2

uses a five-step sequential evaluation to determine whether the [plaintiff] is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the [residual functional capacity, or] RFC[,] to perform her past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Soc. Sec.*, 457 Fed. App'x 868, 870 (11th Cir. Feb. 9, 2012) (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted).

If a plaintiff proves that he or she cannot do his or her past relevant work, it then becomes the Commissioner's burden to prove that the plaintiff is capable—given his or her age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Id.*; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, but importantly, although "the [plaintiff] bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted).

The task for this Court, then, is to determine whether the Commissioner's decision to deny a plaintiff benefits is supported by substantial evidence. Substantial evidence is defined as more than a scintilla, and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "In determining whether

3

substantial evidence exists, [a court] must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. App'x 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is **supported by** substantial evidence." *Id.* (citing *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158-59 (11th Cir. 2004)) (emphasis added).

On appeal to this Court, Hogue claims two reasons require a finding that the Commissioner's decision to deny him benefits is in error (*i.e.,* is not supported by substantial evidence):

(1) The ALJ erred by rejecting the January 31, 2012 opinion of Hogue's treating physician, Dr. Timberlake; and

(2) The ALJ erred by rejecting the opinion of Dr. Blanton regarding Hogue's cognitive limitations and, accordingly, failed to find he meets Listing 12.05C.

The Court finds that Hogue's second asserted error requires remand to the Commissioner. There is therefore no need to consider his first claim. *Cf. Salter v. Astrue*, No. CA 11–00681–C, 2012 WL 3817791, at *2 (S.D. Ala. Sept. 4, 2012) ("Because the Court determines that the decision of the Commissioner should be reversed and remanded for further proceedings based on the plaintiff's second claim, regarding the RFC determination, there is no need for the Court to consider the

4

plaintiff's other claims." (citing *Robinson v. Massanari*, 176 F. Supp. 2d 1278, 1280 & n.2 (S.D. Ala. 2001); *Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985) ("Because the 'misuse of the expert's testimony alone warrants reversal,' we do not consider the appellant's other claims."))).

### III. Analysis

As to the ALJ's consideration of Hogue's cognitive limitations, in sum, Hogue asserts that, in light of the opinion of Dr. Donald Blanton (R. 288-291), the ALJ erred by not considering whether Hogue meets Listing 12.05(C).

**A. Listings Generally.**

At the third step of the sequential evaluation, the ALJ found that Hogue "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 . . . ." (R. 15.) Pertinent to the issue now before the Court, the ALJ also noted

> with regard to the psychological limitations, the severity of [Hogue's] mental impairment does not meet or medically equal the criteria of listings 12.02, 12.04, 12.06, and 12.07. The 12.07 listing is used because an examining psychologist[3] diagnosed pain disorder based on observations of over concern about the knee issues. Listing 12.02, ***rather than 12.05*** was used because while there is some evidence of intellectual limitations, ***there is evidence of adaptive functioning not consistent with use of 12.05***.

(R. 15-16 (emphasis added).)

"A claimant is conclusively presumed to be disabled if he meets or equals the

---

[3] At oral argument, counsel for Hogue clarified that Dr. Blanton is not a psychologist, but is rather a licensed professional counselor and a psychometrist.

5

level of severity of a listed impairment, or Listing." *Perkins v. Commissioner, Soc. Sec. Admin.*, --- Fed. App'x ----, 2014 WL 223905, at *1 (11th Cir. Jan. 22, 2014) (per curiam) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997)). Under the law of this Circuit, a claimant **bears the burden** of proving that he or she has an impairment that meets or is medically equivalent to a listed impairment. *See Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) ("We hold that when a claimant contends that he has an impairment meeting the listed impairments entitling him to an adjudication of disability under regulation 404.1520(d), he must present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency."); *accord Perkins*, 2014 WL 223905, at *1 ("The claimant bears the burden of demonstrating that he meets a Listing." (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir.1991))); *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002) ("To 'meet' a Listing, a claimant must have a diagnosis included in the Listings and must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement. . . . To 'equal' a Listing, the medical findings must be 'at least equal in severity and duration to the listed findings.'").

    **B.    Listing 12.05(C).**

To establish presumptive disability under section 12.05(C), a claimant must

6

present evidence of "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing additional and significant work-related limitation of function[,]" 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C),[4] ***and*** "also satisfy the 'diagnostic description' of mental retardation in Listing 12.05[,]"[5] *Cooper v. Commissioner of Soc. Sec.*, 217 Fed. App'x 450, 452 (6th Cir. Feb. 15, 2007) (citing *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001)); *see also Grant v. Astrue*, 255 Fed. App'x 374, 375 (11th Cir. Nov. 13, 2007) (per curiam) ("The mental retardation Impairment Listing in § 12.05C requires the claimant to demonstrate **[1]** a 'significant subaverage general intellectual functioning ***with deficits in adaptive functioning*** initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before

---

[4] Several of the various tests for determining IQ scores have been modified since the Listings were created. *See, e.g., Isaac ex rel. J.D.M. v. Astrue*, No. 1:12–97–C, 2012 WL 5373435, at *4 (S.D. Ala. Oct. 30, 2012). For example, the Wechsler Adult Intelligence Scale (the "WAIS"), one common test—and the test used in this case—is now on the fourth edition (the "WAIS-IV"). While the WAIS-IV continues to measure "full scale IQ," it no longer measures verbal IQ or performance IQ per se. Instead, a verbal comprehension index score is the functional equivalent of verbal IQ, and a perceptual reasoning index score is the functional equivalent of performance IQ. *See Thibeault v. Commissioner of Soc. Sec.*, No. 8:13–cv–586–T–MCR, 2013 WL 6498390, at *5 (M.D. Fla. Dec. 11, 2013) (citing *Martin v. Commissioner of Soc. Sec.*, No. SAG–12–1130, 2013 WL 4512071, at *2 (D. Md. Aug. 22, 2013); *Smith v. Astrue*, No. 11–948–CJP, 2012 WL 2990064, at *3 (S.D. Ill. July 20, 2012)).

[5] "Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05. "'Adaptive functioning' refers to a person's ability to perform activities of daily living and social functioning." *Fischer v. Barnhart*, 129 Fed. App'x 297, 301-02 (7th Cir. Feb. 11, 2005) (citation omitted). And, in this Circuit, a claimant who presents a valid IQ score of 60 to 70 is entitled to the presumption that he manifested deficits in adaptive functioning before the age of 22. *See Hodges v. Barnhart*, 276 F.3d 1265, 1266, 1268-69 (11th Cir. 2001).

age 22,' ***as well as*** **[2]** a 'valid verbal, performance, or full scale IQ of 60 through 70 ***and*** **[3]** a physical or other mental impairment imposing an additional and significant work-related limitation of function.'" (quoting §§ 12.00A, 12.05, 12.05(C)) (emphasis added)).

Presumptive disability pursuant to Listing 12.05(C) is rebuttable, however, and the Commissioner is charged with determining whether there is sufficient evidence to rebut the presumption. *Perkins*, 2014 WL 223905, at *2 ("A valid IQ score does not have to be conclusive of mental retardation where the IQ score is inconsistent with other record evidence regarding the claimant's daily living activities and behavior.").[6] For example, in *Lowery v. Sullivan*, 979 F.2d 835 (11th Cir. 1992), the Eleventh Circuit recognized that a valid IQ score is not necessarily conclusive of mental retardation where the score is inconsistent with other evidence of a claimant's daily activities, *see id.* at 837. And in the context of 12.05(C), the Eleventh Circuit held:

> To establish a disability under section 12.05(C), a claimant must present evidence of a valid verbal, performance, or full-scale I.Q. score of between 60 and 70 inclusive, and of a physical or other mental impairment imposing additional and significant work-related limitation of function. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05(C) (1992). . . .
>
> Generally, a claimant meets the criteria for presumptive disability under section 12.05(C) when the claimant presents a valid I.Q. score of 60 to 70 inclusive, and evidence of an additional mental or physical

---

[6] In *Perkins*, the Eleventh Circuit made it clear that an ALJ may "consider evidence of [a claimant's] work experience and adaptive functioning." *Id.*; *see id.* at *3 (noting Perkins's past work was classified as skilled or semiskilled ***and*** included managing others).

8

impairment that has more than "minimal effect" on the claimant's ability to perform basic work activities. *See Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1517 (11th Cir. 1985). This court, however, has recognized that a ***valid I.Q. score need not be conclusive of mental retardation*** where the I.Q. score is inconsistent with other evidence in the record on the claimant's daily activities and behavior. *Popp v. Heckler*, 779 F.2d 1497, 1499 (11th Cir. 1986) (rejecting a claim of section 12.05(C) mental retardation where the claimant's ***I.Q. score of 69*** was inconsistent with evidence that he had ***a two-year college associate's degree, was enrolled in a third year of college as a history major, and had worked in various technical jobs such as an administrative clerk, statistical clerk, and an algebra teacher***).

*Id.* at 837 (emphasis added).

### C. Hogue presumptively meets Listing 12.05(C).

Here, the ALJ recognized the following severe impairments: pain disorder with anxiety and depression; limited intellectual functioning capacity; and left knee status post cartilage replacement surgery. (*See* R. 15.) Thus, Hogue has physical or other mental impairments that impose an additional and ***significant*** work-related limitation of function. *See Edwards*, 755 F.2d at 1515 ("That 'significant' involves something more than 'minimal' but less than 'severe' follows from the regulations. . . . The impairment referred to in § 12.05(C) is something less than 'severe' as defined in § 404.1520(c)." (citations omitted)); *see also Grisby v. Astrue*, No. CV 11–06355–MAN, 2012 WL 3029766, at *4 (C.D. Cal. July 24, 2012) ("By finding this impairment to be 'severe,' the ALJ necessarily concluded that this impairment has more 'than a minimal effect on [plaintiff's] ability to work.'" (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996))); *cf.* R. 35 ("Dr. Blanton diagnosed [Hogue] with mild anxiety and depression, which I have accepted as

9

severe."). Hogue has also presented a valid full scale IQ score of 67.[7] (*See* R. 290). And it is the opinion of Dr. Blanton that Hogue has mild mental retardation and deficits in adaptive functioning in communication, work, and functional academic skills. (*See* R. 291.) Thus, Hogue has carried his "burden of demonstrating that he meets a Listing[,]" Listing 12.05(C), *Perkins*, 2014 WL 223905, at *1, and "is entitled to [the rebuttable] presumption" of disability. *Frank v. Astrue*, No. CA 2:11–00215–C, 2011 WL 6111692, at *4 (S.D. Ala. Dec. 8, 2011) ("[I]t is clearly error to not consider Listing 12.05(C) and, given the evidence before the ALJ, first find that a claimant is presumptively disabled. Under the correct framework—which the ALJ should apply on remand—the plaintiff is entitled to this presumption and the burden falls on the Commissioner to rebut it.").

> **D. Because Hogue has carried his burden to demonstrate he meets Listing 12.05(C), the ALJ's failure to explicitly address the Listing—acknowledge its applicability and consider whether sufficient evidence rebuts the presumption of disability—requires remand.**

As stated above, at step three of the sequential evaluation here, the ALJ neither directly analyzed whether Hogue meets or equals the level of severity of Listing 12.05(C) nor, consequently, did she directly present evidence to rebut the presumption that he meets or equals that listing. Instead, she stated she

---

[7] The ALJ acknowledged that a full scale IQ score of 67 "placed [Hogue] in the mild range of mental retardation" (R. 31), and while she did not directly question the validity of Dr. Blanton's testing, she did state that "the evaluation starts out demonstrating that it is not fully credible" either because of a misstatement by Hogue or misunderstanding by Dr. Blanton (R. 30). This apparent critique of Dr. Blanton's report and opinion appears to be undercut, however, by the ALJ's decision to then "assign[] significant weight to Dr. Blanton's opinion." (R. 35.)

considered "Listing 12.02, rather than 12.05 . . . because while there is some evidence of intellectual limitations, there is evidence of adaptive functioning not consistent with . . . 12.05" and that this decision would be "discuss[ed ] at greater length below." (R. 16.) She then waits to her lengthy step four discussion (R. 17-35) to analyze the only IQ testing in the record, Dr. Blanton's (*see* R. 30-33).

It has been held that "[b]y conflating the sequence, [an] ALJ undermine[s] the reasons behind having an analysis of five separate steps." *Mims v. Astrue*, 701 F. Supp. 2d 892, 906 (S.D. Tex. 2010). That may be true. Certainly, the failure of the ALJ here to address Listing 12.05(C) head on at the third step and, instead, attempt to address Dr. Blanton's opinion—the evidence signaling the need to consider that listing—in the context of her step-four RFC determination is confusing and makes her decision difficult for a reviewing court to follow. The ALJ should have discussed the IQ testing as well as the evidence of adaptive functioning she contends belies Hogue's IQ score at the third step of the sequential evaluation. She instead appears to use Hogue's adaptive skills (as well as his deficits, as noted in Dr. Blanton's opinion) at the fourth step, to shape the RFC. (*See, e.g.,* R. at 34-35.[8])

---

[8] Among other things, the ALJ observed,

> Dr. Blanton did state that [Hogue's] mental retardation has been present throughout his lifetime, and that [Hogue's] emotional problems were likely to increase if he was placed under stress especially that of a job [sic]. I reduced [Hogue] to simple work as a result. . . . Furthermore, Dr. Blanton offered that [Hogue] had marked limitations that seriously interfere with his ability ot perform work related to activities on a day-to-day basis in a regular work setting in understanding, carrying out, and remembering ***detailed or complex*** instructions. He did not preclude simple work. . . .

(*Id.* (emphasis provided by the ALJ).)

11

This failure to apply "the correct framework" is error, which is not harmless because it prevents the undersigned from determining whether the ALJ's conclusions at the third step are supported by substantial evidence. *Frank*, 2011 WL 6111692, at *4.

Furthermore, although the ALJ considers the applicability of other Listings (*see* R. 15-17), her failure to specifically address—and make specific findings as to—Listing 12.05(C) is also an error requiring remand. *Compare Foster v. Astrue*, No. C 11–3063–MWB, 2012 WL 5386382, at *4-5 (N.D. Iowa Nov. 1, 2012) (although "the ALJ expressly addressed Listings 12.02 (organic mental disorder) and 12.04 (affective disorder), [the ALJ] did not address Listing 12.05C," which was in error because the plaintiff "clearly [met] or equal[ed] two of the three criteria under Listing 12.05C" and there was "evidence that may support a finding that [he met] the third criterion"; the court remanded, instructing the ALJ to "conduct an analysis of Listing 12.05C and ***make specific findings concerning*** Listing 12.05C" (emphasis added)), *with Dexter v. Astrue*, No. 2:11–cv–213–GZS, 2012 WL 1636267, at *2 (D. Me. May 6, 2012) (error for an ALJ not to mention specific listing being considered, which is not harmless if "combined with a perfunctory analysis" (quoting *Ribaudo v. Barnhart*, 458 F.3d 580, 583 (7th Cir. 2006))).

> **E.  Even if the Court accepted the ALJ's implicit Listing 12.05(C) analysis, the adaptive skills she identifies are not necessarily inconsistent with Hogue's IQ score and, thus, are not sufficient evidence to rebut the presumption of disability.**

Assuming this Court may review the adaptive functioning the ALJ discussed at step four—presumably the reason why she did evaluate Hogue pursuant to Listing 12.05(C) at step three (*see* R. 16)—the adaptive skills the ALJ

12

(non-conclusorily) identified are not necessarily inconsistent with Hogue's IQ score.

The ALJ identifies the following adaptive skills (R. 32):

- Hogue "has friends and a girlfriend and [ ] has no difficulties in this regard. Thus he has exhibited no adaptive deficit in forming relationships."

- The vocational expert's testimony regarding Hogue's past work history is "not consistent with the conclusion of mental retardation."[9]

- Hogue "shops and knows how to handle money, which also is inconsistent with a finding of adaptive deficits."[10]

- Hogue "knows how to prepare meals and do household chores. He takes care of his son, which shows he has made adaptations in functioning that are more significant than having responsibility for just himself."

- Hogue previously played video games and used Facebook.

Elsewhere, the ALJ discussed that Hogue worked as a lifeguard, but cited Hogue's testimony that he never took the CPR test. (R. 19-20.) She also cited the fact Hogue has a driver's license (R. 31), and further observed that Hogue "is a well spoken young man who, though he may not enjoy the written word as a medium of communication, is nonetheless capable of it. . . ." (R. 32.) It is also very relevant that Hogue repeated the fifth, sixth, and seventh grades before dropping out of school during his second attempt at seventh grade. (*See* R. 224-225).

As indicated above, Listing 12.05(C) claims of mental retardation may be

---

[9] The VE classified Hogue's past relevant work as semi-skilled. (*See* R. 72.)

[10] Although Hogue agreed with the ALJ that when he did have money, he would shop, he also testified that he has never had a checkbook or debit card. (*See* R. 49-50.) He also testified that his father opened a checking account for him and that his father's name was also on the account. (*See* R. 50.)

13

rejected where a claimant's score is inconsistent with other evidence in the record. *See Lowey*, 979 F.2d at 837 (citing *Popp*, 779 F.2d at 1499 (noting that in addition to the IQ score, it is also appropriate to consider other evidence in the record, such as medical reports, daily activities, and behavior)). While "*Popp* is perhaps the strongest case for finding that an IQ score below 70 does not necessarily meet Listing 12.05C[, t]here are several other [decisions from courts in this Circuit] with facts somewhat like *Popp*." *Loveday v. Astrue*, No. 1:10cv14-MP/WCS, 2010 WL 4942740, at *14 (N.D. Fla. Oct. 22, 2010), *report & recommendation adopted by* 2010 WL 4942733 (N.D. Fla. Nov 23, 2010).

From a previous review by this Court of decisions similar to *Popp*—in Magistrate Judge Cassady's decision in *Frank*, *see* 2011 WL 6111692, at *4-6—it is apparent that the adaptive skills identified by the ALJ here are not necessarily inconsistent with Hogue's IQ score and, thus, are not sufficient evidence to rebut the presumption of disability.

First, while a plaintiff's relatively high level of educational attainment (including vocational training) may be inconsistent with an IQ reflecting mental retardation, Hogue's level of education (dropping out in the seventh grade) is not inconsistent with an IQ score of 70 or below. Next, past work requiring a level of skill inconsistent with an IQ reflecting mental retardation undercuts such an IQ. Examples of such work include managerial, supervisory, and technical positions. Hogue's past relevant work does not appear to be similar to such positions, as those positions were discussed in *Bischoff v. Astrue*, No. 07-60969-CIV, 2008 WL 4541118,

14

at *20 (S.D. Fla. Oct 9, 2008) and *Davis v. Astrue*, Civil Action No. 2:07cv880-TFM, 2008 WL 2939523, at *3 (M.D. Ala. Jul 25, 2008); *see also Perkins v. Colvin*, No. 1:11–cv–182 (WLS), 2013 WL 997466, at *1-2 (M.D. Ga. Mar. 13, 2013), *aff'd* --- Fed. App'x ----, 2014 WL 223905 (11th Cir. Jan. 22, 2014) (per curiam) (substantial evidence supported Commissioner's finding that Listing 12.05(C) not met where "Plaintiff had substantial responsibilities and, by his own admission, took inventory, managed other employees, and cooked and prepared food").

Further, the ability to perform tasks required for or indicative of independent living, **standing alone**, is not inconsistent with IQ scores lower than 70. *See Alday v. Astrue*, No. 5:08cv217-SPM/WCS, 2009 WL 347722, at *3-7 (N.D. Fla. Feb. 11, 2009) (rejecting the ALJ's reliance on evidence that the claimant had a boyfriend, did housework, took care of a pet, and helped with her grandchildren); *Black v. Astrue*, 678 F. Supp. 2d 1250, 1261 (N.D. Fla. 2010) (rejecting ALJ's reliance on evidence that the claimant could drive a motor vehicle for short distances, cook, take care of her personal needs, and handle cash without a bank account).

Finally, *Frank* identified cases where there was evidence a plaintiff was malingering during the IQ testing and where there was also a determination in the record that a plaintiff was in the borderline level of intellectual functioning rather that mildly retarded.[11] As to Hogue, there is neither evidence of malingering nor a

---

[11] *See also Smith v. Commissioner of Soc. Sec.*, 535 Fed. App'x 894, 897 (11th Cir. Sept. 11, 2013) (per curiam) ("[T]he record supports the conclusion that, due to her limited effort during examination and apparent fatigue, Smith's IQ scores were not valid and underestimated her actual level of functioning. . . . [E]ven though even though she was diagnosed with possible borderline intellectual functioning, this diagnosis alone was

determination (i.e., by a medical professional) other than that of mild mental retardation.

## IV. Conclusion

It is accordingly **ORDERED** that the decision of the Commissioner of Social Security denying Hogue benefits be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *see Shalala v. Schaefer*, 509 U.S. 292 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 29th day of April, 2014.

    */s/ Katherine P. Nelson*
    **KATHERINE P. NELSON**
    **UNITED STATES MAGISTRATE JUDGE**

---

insufficient to meet the criteria of Listing 12.05(C)."); *Hickel v. Commissioner of Soc. Sec.*, 539 Fed. App'x 980, 983-85 (11th Cir. Oct. 28, 2013) (per curiam) ("[T]hree medical sources . . . all determined based on Hickel's better-than-expected functional capacity that Hickel's mental impairment was more consistent with borderline intellectual functioning than mild mental retardation."); *Siron v. Commissioner, Soc. Sec. Admin.*, --- Fed. App'x ----, 2014 WL 595287, at *2 (11th Cir. Feb. 18, 2014) (per curiam) ("[T]he evidence presented in cases where we affirmed an ALJ's rejection of an IQ score overwhelmingly indicated that the claimant was not mentally retarded and likely attempted to tailor results to effect a desired outcome, which is not the case here.") (reversing and remanding district court decision affirming Commissioner).